UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,

     Plaintiff,

v.                         CASE NO.: 8:09-cv-384-T-23-TGW

WILLIAM O'CALLAGHAN, et al.,

     Defendants.

_____/


## <u>ORDER</u>

Because William O'Callaghan's residence is subject to a prompt foreclosure sale unless a stay is granted, the district court has examined closely and afresh the circumstances and status of this case.  O'Callaghan bought the residence at a moment years ago when he both owed delinquent taxes and had money; he could have paid his delinquent taxes with the money, but he bought the residence, instead.  The IRS placed a lien on the residence but collection fell victim to protracted but fruitless negotiation and a bankruptcy.  O'Callaghan has nothing approaching a meritorious defense to the foreclosure; his persistence in combatting the foreclosure emits the unmistakable aroma of programmatic tax resistence or opportunism or both.

The record is devoid of any reason in fact or law to grant a stay.  Unless the judiciary chooses to grant an automatic stay in any case – regardless of merit – if a

residence is subject to foreclosure (and the judiciary has never so chosen), the motion for a stay warrants denial.  A detailed explanation follows.

DISCUSSION

For nearly twenty-five years, O'Callaghan resisted and avoided paying his federal income tax for 1981, 1982, and 1983.  See, e.g., (Doc. 91 at 3, 12 n.4) (finding that in 1987 and 1988 O'Callaghan avoided an IRS officer's numerous attempts to schedule a meeting); In re O'Callaghan, 316 B.R. 550, 559 (M.D. Fla. 2004) (finding that O'Callaghan "persistently avoided payment" of taxes).  For more than two years, the United States pursued this action to win a money judgment against O'Callaghan for unpaid 1999, 2000, and 2001 income tax and to foreclose a tax lien on O'Callaghan's residence for the 1981, 1982, and 1983 tax delinquency, which is more than $2 million with interest and penalties.  The United States prevails, and O'Callaghan and the other defendants appeal.[1]  Without offering a supersedeas bond, the defendants move (Docs. 108, 116, 117) to stay pending the appeal both a money judgment (Doc. 106) for $81,386.19 plus interest against O'Callaghan and an order of sale (Doc. 112) of O'Callaghan's residence.

The defendants seek a stay under Rule 62(d), Federal Rules of Civil Procedure, and in the alternative under Rule 62(c) and Rule 62(f).  A stay is unwarranted under Rule 62(d) because the defendants are unable to secure the United States' judgment during the appeal and the United States, the prevailing party, should not bear the risk of

---

[1] The other defendants are parties with a potential interest in O'Callaghan's residence.  The factual history of the action is available in greater detail in Magistrate Judge Wilson's report and recommendation (Doc. 91), in a July 22, 2011, order issuing an interim stay (Doc. 128), and in orders in one of O'Callghan's bankruptcy proceedings.  316 B.R. 550 (M.D. Fla. 2004); 342 B.R. 364 (M.D. Fla. 2006).

loss during the appeal.  Rule 62(c) and Rule 62(f) are inapplicable and in any event are not satisfied.

## I. The Order of Sale

### 1. Rule 62(d)

A supersedeas bond serves to fully secure a judgment during an appeal and to compensate the judgment creditor in the event of loss caused by the stay.  Moore v. Townsend, 577 F.2d 424, 427 (7th Cir. 1978).  The practice of providing a judgment creditor full security during an appeal dates at least to the early seventeenth century, see Omaha Hotel v. Kountze, 107 U.S. 378, 381-84 (1883), and was incorporated into early American law.  Section 22 of the Judiciary Act of 1798 requires a "judge signing a citation on any writ of error [to] take good and sufficient security, that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he fails to make his plea good."  Ch. 20, sec. 22.  In 1824, Justice Story confirmed that Section 22 requires a bond to secure the entire judgment.  Catlett v. Brodie, 22 U.S. 553 (1824).  In 1874, Chief Justice Waite wrote in a foreclosure action that:

> the judge who [considers a stay] is called upon to determine what amount of security will be sufficient to secure the amount to be recovered for the use and detention of the property, and the costs of the suit, and just damages for the delay and costs and interest on the appeal.  All this, by the rule, is left to his discretion.

Jerome v. McCarter, 88 U.S. 17, 30 (1874).  In 1878, Section 1000 of the Revised Statutes codified Section 22 of the Judiciary Act of 1798; Section 1000 retained the requirement that an appellant "answer all damages and costs" if an appeal fails.  See Tennessee Valley Authority v. Atlas Mach. & Iron Works, Inc., 803 F.2d 794, 799 (4th Cir. 1986); see also Martin v. Clarke, 105 F.2d 685, 687 (7th Cir. 1939) ("a long line of

cases" requires that a bond secure a money judgment creditor "for the full amount of the judgment stayed, with interest and costs").  Beginning in 1938, Rule 73(d), Federal Rules of Civil Procedure, governed a stay pending appeal.  "That rule, before its 1968 abrogation, required that the supersedeas bond . . . be for the full amount of the judgment plus interest, costs, and an estimate of any damages attributed to the delay."  12 Moore et al., Moore's Federal Practice, § 62.03[1] (3d ed. 2010).  Although replaced by Rule 62(d), "the pre-1968 version of Rule 73(d) set[s] out what is, in effect, the practice in most federal district courts [today]."  Moore et al., supra, § 62.03[1]; accord Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979).

Like each supersedeas bond requirement since 1798, Rule 62(d) ensures that a defendant can and will pay a victorious plaintiff if the judgment is affirmed.  Lightfoot v. Walker, 797 F.2d 505, 506-07 (7th Cir. 1986). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectable judgment and compensates him for delay in the entry of final judgment."  NLRB v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988).

The defendants request a stay with no attendant supersedeas bond to secure the United States.  However:

> If a court chooses to depart from the usual requirement of a full security supersedeas bond . . . it should place the burden on the moving party to objectively demonstrate the reasons for such departure.  It is not the burden of the judgment creditor to initiate contrary proof.

Poplar Grove, 600 F.2d at 1191.  Even if a judgment debtor presents sufficient reason to depart from the requirement of a full bond, Poplar Grove strongly suggests that the

judgment debtor must provide substitute security that "furnish[es] equal protection to the judgment creditor."  600 F.2d at 1191; <u>see</u>, <u>e.g.</u>, <u>Morgan Guar. Trust Co. of New York v. Republic of Palau</u>, 702 F.Supp. 60, 65 (S.D.N.Y. 1988) ("a partial supersedeas bond [must not] unduly endanger the judgment creditor's interest in ultimate recovery").  Also, if the judgment debtor posts no bond, whether to grant a stay is a matter "strictly within the judge's discretion."  <u>In re Combined Metals Reduction Co.</u>, 557 F.2d 179, 193 (9th Cir. 1977); <u>see</u> <u>also</u> <u>United States v. Certain Real and Personal Property Belonging to Hayes</u>, 943 F.2d 1292, 1296 (11th Cir. 1991); Moore et al., <u>supra</u>, § 62.03[1].

One typical ground for reducing or waiving the bond requirement pending appeal is that a judgment debtor is sufficiently solvent to "facilely respond to a money judgment."  600 F.2d at 1191.  Conversely, another ground is that a judgment debtor's posting a bond would endanger other creditors.  <u>Olympia Equip. v. Western Union Tel. Co.</u>, 786 F.2d 794, 796 (7th Cir. 1986).  Neither ground is present here, and the unpublished cases cited by the defendants do not suggest that the foreclosure of a tax lien is cause for departure from the bond requirement.[2]  Rather, "a party is not entitled to a waiver of the supersedeas bond . . . solely because the judgment res consists of real

---

[2] <u>United States v. Indianapolis Baptist Temple</u>, 1999 WL 1249452 (S.D. 1999), found that a bond was a hindrance to other creditors' efforts to collect from the defendant (one of the traditional causes for deviating from the bond requirement).  <u>Indianapolis Baptist Temple</u> found also that a bond was unnecessary because the defendant paid a mortgage during the stay that acted as "installment payments to the United States" and because the real property was well insured.  <u>Spellman v. Aetna Plywood, Inc.</u>, 1992 WL 80528 (N.D. Ill. 1992), a perfunctory opinion that lacks analysis, does not address a tax lien and concerns a fraction the amount of money at issue in this action.  Further, in <u>Spellman</u> the small money judgment was apparently secured by a lien on the judgment debtor's property.  Finally, the stay in <u>United States v. Moyer</u>, 2008 WL 3478063 (N.D. Cal. 2008), was premised almost entirely on the likelihood that the judgment debtor would succeed on the merits.  The likelihood that the defendants will succeed on appeal is slim.  <u>See</u> sec. I.2, <u>infra</u>.

property." <u>United States v. Route 7, Box 7091, Chatsworth, Ga</u>, 1997 WL 412477, *2 (N.D. Ga. 1997), <u>aff'd</u> 117 F.3d 1433 (11th Cir. 1997).

The defendants argue that the United States' tax lien on O'Callaghan's residence fully secures the judgment.  To the contrary, to secure a judgment, real property must typically retain higher value than the base value of the judgment.[3]  <u>See</u>, <u>e.g.</u>, <u>Brooktree Corp. v. Advanced Micro Devices, Inc.</u>, 757 F.Supp. 1101, 1104 (S.D. Cal. 1990) (requiring "real property security with a value twice the amount of the judgment").  To secure the United States' judgment with O'Callaghan's residence alone would leave the judgment subject to the whims of the housing market and O'Callaghan's willingness to maintain the value of the residence.  "The exception to the rule requiring full security should [not] permit a defendant to post security of uncertain value in place of a full supersedeas bond." <u>Advanced Estimating System, Inc. v. Riney</u>, 171 F.R.D. 327, 328 (S.D. Fla. 1997) (Ryskamp, J.).  Especially today, "[r]eal property values are subject to substantial variation."  <u>Brooktree Corp.</u>, 757 F.Supp. at 1104-05.  Worse, a person has little incentive to maintain a property he is likely to lose.  O'Callaghan has even less incentive to maintain a property he is likely to relinquish to the IRS, toward which O'Callaghan is overtly hostile.[4]  Even if the housing market remains stable and

_____

[3] Indeed, a judgment debtor posting a bond must typically post a bond for more than the value of the judgment to provide security for interest, costs, and an award of damages for delay.  Consequently, many districts' local rules provide a standard supersedeas bond formula that creates a bond more valuable than the judgment.  <u>See</u>, <u>e.g.</u>, S.D. Fla. L.R. 62.1(a) (suggesting a supersedeas bond for the full amount of the judgment plus ten percent); D. Mass. L.R. 62.2 (same); D. Kan. L.R. 221 (the full amount plus twenty-five percent).

[4] While proceeding <u>pro se</u>, O'Callaghan accused the United States and the IRS of indifference to the law, illegal conduct, threatening and harassing conduct, bullying, obstruction and stonewalling, bad faith, lying, and recklessness, among other supposed horribles.  <u>See</u>, <u>e.g.</u>, (Docs. 7 at 28, 30, 40-41, 53, 64; 22 at 5-7; 33 at 2)

O'Callaghan maintains the residence, absent a bond the United States lacks protection against damage to the house.  Cf. Route 7, 1997 WL 412477, *1 ("an assortment of natural disasters [] could dramatically alter the value of the forfeited property").  In short, the defendants propose alternate security of both uncertain and inadequate value.  Therefore, a stay would disserve the fundamental purpose of Rule 62(d) "to protect the judgment creditor's position from erosion during [the] period that its right to execute is obstructed by a stay pending appeal."  Olympia Equip. Leasing Co., 786 F.2d at 800 (Easterbrook, J., concurring).

The defendants cite factors enumerated in Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th 1988), which "the district court may look to" when determining whether to waive a supersedeas bond:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment . . ; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money . . ; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

866 F.2d at 904-05.  Despite bearing the burden to objectively show that waiver of the appeal bond is warranted, 600 F.2d at 1191, the defendants fail to analyze the Dillon factors.  Regardless, the factors provide no support to the defendants.  As previously noted, the defendants mention no other creditor that would suffer peril from a bond, and the defendants appear completely unable to pay for interest, costs, or damages accrued during the appeal.

Because the defendants fail to justify alternate security and fail to provide adequate alternate security, the history and purpose of the supersedeas bond and the case law require denial of the stay.

### 2. Rule 62(c)

Rule 62(c) states, "While an appeal is pending from a[] final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Asserting that the order of sale is akin to a money judgment (and therefore governed by Rule 62(d)), the defendants argue for a stay under Rule 62(c) in the alternative without arguing why Rule 62(c) should apply.  The United States argues that a stay under Rule 62(c) is unwarranted but presents no argument that Rule 62(c) is inapplicable.

A civil forfeiture action is in rem.  United States v. Tit's Cocktail Lounge, 873 F.2d 141, 143 (7th Cir. 1989); see also United States v. Rodgers, 461 U.S. 677, 694-95 (1983); Garrido v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 891 So.2d 1091, 1092 (Fla. 4th DCA 2004) ("A lien against property is in rem").  "Equity operates not in rem, but wholly in personam by working on the volition or conscience of the defendant." Harnischfeger Sales Corp. v. Nat'l Life Ins. Co., 72 F.2d 921, 924 (7th Cir. 1934); see, e.g., Indemnity Ins. Co. of North Am. v. Smoot, 152 F.2d 667, 670 (D.C. Cir. 1946).  An injunction, of course, is an equitable remedy.  See, e.g., Amoco Production Co. v. Village of Gambell, AK, 480 U.S. 531, 542 (1987).  A few short hops from one fundamental principle to another compel the conclusion that the order of sale is not an injunction.  Accord United States v. Dornbrock, 2008 WL 2894829 (M.D. Fla. 2008) (Marra, J.).  Moreover, Rule 62(c) requires a "bond or other terms that secure the

- 8 -

opposing party's rights." The defendants offer only the O'Callghan residence as security, which does not adequately secure the United States.

Even if Rule 62(c) applied, the defendants fail to show a stay should issue. A Rule 62(c) stay is a disfavored and extraordinary remedy. Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986); Jaffe v. Bank of America, N.A., 667 F.Supp.2d 1299, 1323 (S.D.Fla. 2009) (King, J.). Although discretionary, a stay under Rule 62(c) requires that the appellant is likely to succeed on the merits, that the appellant will suffer irreparable injury without a stay, that the appellee will suffer no substantial injury with a stay, and that a stay will serve the public interest. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); In re Federal Grand Jury Proceedings, 975 F.2d 1488, 1492 (11th Cir. 1992); United States v. Blackburn, 538 F.Supp. 1385, 1386-87 (M.D. Fla. 1982) (Black, J.).

The likelihood of success is typically the most important factor. Garcia-Mir, 781 F.2d at 1453. The United States submits a valid, certified copy of each tax assessment against O'Callaghan. Each certified assessment is presumptively valid, and the burden of disproving each assessment rests squarely on the defendants. See, e.g., United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir. 1989). No record evidence in this action places doubt on the calculations in, or the validity of, the assessments. (Doc. 91 at 14-18) The United States submits valid proof that O'Callaghan was sent a notice of deficiency for unpaid taxes, and the defendants bear the burden of showing that the notice was not sent. Several frivolous arguments challenge the notice, but no evidence. (Doc. 91 at 19-26) The defendants argue that the applicable limitation bars the tax assessments, but O'Callaghan filed his returns years late and was in bankruptcy for

years.  Because the applicable limitation excludes the years of filing delinquency and

bankruptcy, the assessments are timely.  (Doc. 91 at 30-32)  The defendants show no

genuine dispute of material fact (the defendants are not even close to showing a

genuine dispute of material fact).  Also, the defendants' legal claims on appeal are

baseless.  O'Callaghan claims a denial of due process, but the record shows

O'Callaghan has fully exploited every opportunity due process offers.  <u>See</u> (Doc. 91 at

11-14)  The defendants obstinately insist that the tax debt was entirely discharged in

bankruptcy despite the fact that an order in O'Callaghan's bankruptcy expressly rejects

the claim: "the pre[-]petition tax lien of the IRS survived [O'Callaghan's] Chapter 7

case."  <u>In re O'Callaghan</u>, 342 B.R. 364 (M.D. Fla. 2006).  The defendants never explain

(and almost never even cite or acknowledge) the plain language of the order in

O'Callaghan's bankruptcy rejecting their assertion.  <u>See</u> (Docs. 65 at 5-6; 78 at 11-12;

111 at 7); Case No. 11-12975 (Appellant's Reply Brief, 7/18/11).  O'Callaghan's

argument that the order of sale violates the Florida Constitution is no less than a call to

nullify the Supremacy Clause.  <u>See</u> <u>Rodgers</u>, 461 U.S. at 697 ("[Section] 7403 is . . . the

exercise of a sovereign prerogative, incident to the power to enforce obligations of the

delinquent taxpayer . . , and ultimately grounded in the constitutional mandate to lay and

collect taxes"); <u>McCulloch v. Maryland</u>, 17 U.S. 316, 405 (1819) (Marshall, C.J.) ("the

Union, though limited in its powers, is supreme within its sphere of action").[5]   In sum,

success on appeal is exceedingly unlikely.

In the unlikely event that O'Callaghan succeeds on appeal, an array of statutes

ensure that O'Callaghan and the other defendants can obtain full monetary recovery.

See 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 (allowing a taxpayer to sue for a

refund of an illegal tax assessment); 26 U.S.C. § 7433 (allowing a taxpayer to sue for

damages for a reckless or negligent violation of Title 26 during a tax collection); 26

U.S.C. § 7426 (allowing a harmed third-party to sue for damages for a wrongful tax

levy).   On the other side, a stay leaves the United States vulnerable to an irreparable

loss of the entire value of the judgment.   A district court's discretion to stay a judgment

without a bond typically requires that the judgment creditor enjoy alternative and

complete security.   Poplar Grove, 600 F.2d at 1191 ("the court . . . is free to exercise

discretion to fashion some other arrangement for substitute security [that] would furnish

equal protection to the judgment creditor"); Fed. Prescription Service, Inc. v. Am.

Pharm. Ass'n, 636 F.2d 755, 760-61 (D.C. Cir. 1980) ("the district court in its discretion

may order partially secured or unsecured stays if they do not unduly endanger the

judgment creditor's interest in ultimate recovery").   Again, O'Callaghan's residence

alone is insufficient security.   The United States lost nearly eighty percent of

---

[5] The defendants produce a blizzard of other frivolous arguments.   For example, O'Callaghan responded to a standard motion for extension of time by the United States with a lengthy set of objections (Doc. 22), responded to a show cause order addressed to the United States with a rambling, twenty-seven page response (Doc. 41), raised new arguments in an unauthorized reply at the summary judgment stage (Doc. 79; Doc. 91 at 20 n.8), filed extra objections to the report and recommendation under the guise of a new motion (Doc. 104), and responded to the United States' proposed order of sale with fifteen more frivolous objections.   See (Docs. 111, 112)   Yet, as a previous order states, quoting the United States, "despite the volume, breadth and vehemence of the defendants' objections, this is not a difficult case."   (Doc. 105 at 1-2)

O'Callaghan's tax delinquency through O'Callaghan's discharge in bankruptcy of personal liability for the tax.  The residence is the sole remaining asset standing between O'Callaghan and the (for him) happy prospect of entirely escaping $2 million in federal income tax liability.  A stay without a bond leaves the United States exposed to a complete and irreparable loss.  Further, the prompt collection of decades-overdue taxes serves the public interest.  See Bull v. United States, 295 U.S. 247, 259 (1934); Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting).

The United States possesses a judgment, the evidence and the law strongly suggest the judgment is sound, a stay would imperil the judgment, and the public interest favors collection of delinquent tax owed to the United States.  The circumstances demand that the United States enjoy security.  Even if Rule 62(c) applies, the defendants gain no benefit.

### 3. Rule 62(f)

Rule 62(f) provides, "If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give."  The moving party must show that Rule 62(f) "is truly applicable."  Moore et al., supra, § 62.05.  The defendants do not bother.  On the other side, the United States argues correctly that Rule 62(f) is inapplicable because the order of sale is not a "judgment."

Also, the prevailing rule is "that if a judgment creditor needs to perform more than 'ministerial acts' to make the lien effective under the state's lien law, the state's lien law fails to provide for a judgment lien sufficient to satisfy Rule 62(f)."  Moore et al., supra,

§ 62.05.  For example, "prepar[ing] a judgment lien certificate and fil[ing] such certificate in the specific land records where the debtor's property is located," is more than a "ministerial act."  Marandino v. D'Elia, 151 F.R.D. 227, 229 (D. Conn. 1993) aff'd 7 F.3d 221 (2d Cir. 1993); accord Ribbens Intern., S.A. de C.V. v. Transport Intern. Pool, Inc., 40 F.Supp.2d 1141, 1143 n.2 (C.D. Cal. 1999) ("[62(f)] does not apply because . . . . under California law a judgment creditor must record the judgment or an abstract thereof in order to transform [it] into into a lien on property").  Put plainly, if a judgment is not "in and of itself" a lien on property, Rule 62(f) is inoperable.  Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc., 931 F.Supp 930, 939 (D. Mass. 1996).  In Florida, a judgment "in and of itself" is not a lien on real property unless a judgment creditor records the judgment "in the official records or judgment lien record of [a] county."  Fla. Stat. § 55.10(1).

Another major problem for the defendants arises from Rule 62(f)'s "plain" purpose – to ensure that "judgment creditors [are] afforded security while judgment debtors appeal."  Castillo v. Montelepre, Inc., 999 F.2d 931, 942 (5th Cir. 1993).  An alternative to the "ministerial act" interpretation of Rule 62(f) holds that no stay may issue if the judgment creditor in reality gains no security from a lien.  FDIC v. Ann-House Assoc., 1997 WL 1877195 (2d Cir. 1997).  The order of sale forecloses a pre-existing lien on O'Callaghan's property.  Rather than afford the judgment creditor security, a new lien on the property is redundant and provides neither new nor full security.

When arguing whether state law requires a stay (if Rule 62(f) applies), the parties both invoke the wrong law, Rule 1.550(b), Florida Rules of Civil Procedure, which is "a

- 13 -

vehicle for protecting a judgment debtor briefly while he perfects his appeal and obtains supersedeas." Campbell v. Jones, 648 So.2d 208, 209 n.1 (Fla. 3d DCA 1994) (quoting Barnett v. Barnett Bank of Jacksonville, N.A., 338 So.2d 888, 889 (Fla. 1st DCA 1976)). Even if a Florida judgment creates a lien that satisfies Rule 62(f), pursuant to Rule 9.310, Florida Rules of Appellate Procedure, supersedeas requires a bond that secures more (the principal plus twice the interest rate) than the value of the judgment. E.g. PS Capital, LLC v. Palm Springs Town Homes, LLC, 9 So. 3d 643, 646 and n.3 (Fla. 3d DCA 2009); Mellon United Nat. Bank v. Cochran, 776 So.2d 964 (Fla. 3d DCA 2000); Jones, 648 So.2d at 209; Palm Beach Heights Develop. v. Decillis, 385 So.2d 1170, 1171 (Fla. 3d DCA 1980) ("[a party] is entitled to stay of the final judgment only by the posting of [a] bond [of more than the value of the judgment] and the trial court is not empowered to deprive the [judgment creditor] of the[] right to execute the judgment by ordering any lesser bond or otherwise setting less onerous conditions").  One way or the other (or the other) Rule 62(f) is inapplicable.

II. The Money Judgment

Seeking a stay of the money judgment under Rule 62(d) alone, the defendants request that "the Court permit the [United States] to continue its lien on [O'Callaghan's] property as a guaranty of judgment . . . rather than require a supersedeas bond." (Doc. 108 at 3)  Of course, maintenance of the tax lien on O'Callaghan's residence is not a matter of "permission" or discretion because the United States proved an entitlement to the tax lien as a matter of law.  O'Callaghan attempts to bargain with a chip that the United States won during an earlier stage of the litigation.  Moreover, O'Callaghan's residence is subject to the order of sale and therefore cannot secure the money

- 14 -

judgment.  The money judgment defrays the 1999-2001 tax debt and the residence defrays the 1981-83 tax debt.  The United States is likely to prevail on appeal as to the 1981-83 tax debt and to use the residence to satisfy a tax debt different from the tax debt O'Callaghan wishes the residence to secure.  O'Callaghan cannot secure a judgment in favor of the United States with property already subject to a different judgment in favor of the United States.

Also, the defendants ask – without providing a reason or an argument – "that the Court waive completely the necessity for the supersedeas bond."  The defendants fail to engage their burden to objectively show entitlement to a stay without a supersedeas bond.  Poplar Grove, 600 F.2d at 1191.

CONCLUSION

The motions (Docs. 108, 116, 117) for a stay are **DENIED**.  The interim stay (Doc. 128) shall remain in effect until **August 12, 2011**.  If by August 12, 2011, the defendants move for a stay at the Eleventh Circuit, the interim stay shall remain in effect until the Eleventh Circuit's disposition of the defendants' motion.

ORDERED in Tampa, Florida, on August 4, 2011.

**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**